IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| ESTEBAN VELAZQUEZ-RAMIREZ, | |
| Plaintiff, | No. C12-4065-MWB |
| vs. | *REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254* |
| JOHN FAYRAM, | |
| Defendant. | |

_____

## *TABLE OF CONTENTS*

I.    **INTRODUCTION**..................................................................... 2
     A.    *Factual Background* ........................................................ 3
     B.    *Procedural Background* ................................................... 6
         1.    *State Court Proceedings*....................................... 6
         2.    *Federal Proceedings* .......................................... 11

II.    **STANDARD OF REVIEW** ............................................... 12

III.    **DISCUSSION**.................................................................. 15
     A.    *Failure to Investigate Prejudice in Jury Pool and File Motion for Change of Venue* ........................................ 15
         1.    *Argument and Summary of Iowa Court of Appeals Decision* .................................................... 15
         2.    *Prejudice Standard*............................................ 17
         3.    *Review of Iowa Court of Appeals Decision*........................... 20
         4.    *De Novo Review* ........................................... 23
     B.    *Failure to Raise Issue of Compliance with Article 36 of Vienna Convention*.................................................. 27
         1.    *Argument and Summary of Iowa Court of Appeals Decision* .................................................... 27
         2.    *Review of Iowa Court of Appeals Decision*........................... 29
         3.    *De Novo Review* ........................................... 30

    **C.**    *Failure to Challenge Sufficiency of the Evidence to Establish*
         *Malice Aforethought in Motion for Judgment of Acquittal* .............. 33
         **1.**    *Argument and Summary of State Court Decisions*................. 33
         **2.**    *Review of Iowa Court of Appeals Decision*.......................... 34
    **D.**    *Failure to File Motion to Suppress Based on Miranda Violation* ....... 36

**IV.**   **CONCLUSION** ............................................................................. 37

## I.    INTRODUCTION

Esteban Velazquez-Ramirez (Velazquez) was convicted by a jury of murder in the first degree on March 19, 2004. The Iowa Court of Appeals affirmed his conviction. *State v. Valazquez-Ramirez*, 697 N.W.2d 127 (Iowa Ct. App. Mar. 31, 2005) (unpublished table decision).[1] The Iowa Supreme Court then granted limited review and affirmed the decision of the Iowa Court of Appeals and the judgment of the Iowa District Court. *State v. Valazquez-Ramirez*, No. 04-0728, 707 N.W.2d 588 (Iowa Dec. 30, 2005) (unpublished table decision) (per curiam).

Velazquez then filed a state action for post-conviction relief (PCR), which was denied. The Iowa Court of Appeals affirmed that denial. *Velazquez-Ramirez v. State*, 817 N.W.2d 31 (Iowa Ct. App. Apr. 25, 2012) (unpublished table decision). The Iowa Supreme Court denied further review.

Velazquez filed a *pro se* petition under 28 U.S.C. § 2254 in this court on July 2, 2012. (Doc. No. 1). Attorney Zoshua Zeutenhorst was appointed to represent the petitioner and filed a brief on April 19, 2013. (Doc. No. 17). Velazquez also submitted a *pro se* brief addressing additional issues his counsel had not advocated. (Doc. No. 19). The respondent filed a brief on July 17, 2013. (Doc. No. 22). Both a *pro se* reply brief and a reply brief by counsel were filed. (Doc. Nos. 25, 26). The matter is fully submitted. Judge Bennett has referred the matter to me for preparation

---

[1] On direct appeal from his state court conviction, Velazquez's first surname was spelled "Valazquez."

of a report and recommended disposition. I have considered all of the parties' various filings, including the separate *pro se* briefing submitted by Velazquez.

## A. *Factual Background*

The Iowa Court of Appeals summarized the factual background of Velazquez's trial in its opinion on Velazquez's PCR appeal. Absent rebuttal by clear and convincing evidence, I must presume that any factual determinations made by the Iowa courts were correct. 28 U.S.C. § 2254(e)(1); *see Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009) (a federal court must deem factual findings by the state court to be presumptively correct, subject to disturbance only if proven incorrect by clear and convincing evidence). As no such rebuttal has been made, I adopt the following facts as determined by the Iowa Court of Appeals:

> Velazquez–Ramirez had a two-year relationship with a woman named Dora. That relationship ended, and Dora began dating another man. On the day of her death, Velazquez–Ramirez came to the Denison home of Dora's relatives and attempted to talk to Dora. He was told to leave her alone.
>
> Velazquez–Ramirez left town and drove to his hometown in Nebraska to retrieve a gun he had purchased a month earlier. He returned to Denison the same day, parked at Dora's workplace, and waited for Dora to finish her evening shift.
>
> After midnight, Dora and a friend came out of the plant and headed to their cars. As her friend got into his car and began driving out of the parking lot, he saw Dora arguing with someone. He asked her if she needed help. She said she did. He drove to her car, got out, and overheard Velazquez–Ramirez tell Dora he wanted to get back together with her. She said no and asked her friend to call the police.
>
> Just then, Dora's new boyfriend was seen driving through the parking lot. He was haled over and was asked to make

the telephone call to police. As he started to do so,
Velazquez–Ramirez pulled a gun from his clothing and shot
Dora. Dora fell to the ground, and Velazquez–Ramirez took
off running.

Immediately after the shooting, Velazquez–Ramirez drove to
the police station, walked in, and said, "I shot a girl." The
gun used to kill Dora was found in his car. At trial,
Velazquez–Ramirez admitted he shot Dora.

*Velazquez-Ramirez v. State*, 817 N.W.2d 31, at *1-2 (Iowa Ct. App. Apr. 25, 2012)
(unpublished table decision).

Based on my review of the record of Velazquez's trial, I also find the following
facts relevant to the issues Velazquez raises in his petition before this court. Before the
start of trial, Velazquez's attorney, Michael Williams, made a motion for a special jury
questionnaire to be sent by the clerk of court to the jury panel. The District Court
summarized that questionnaire and its results in its PCR decision:

Seventy-five panelists filled out the questionnaire. The
relevant questions on the first page of the supplemental
questionnaire (Trial Ex. 1) were:

1. Do you associate with any persons who are recent
immigrants into the United States?

2. Do you have any opinion about persons who immigrate
illegally into the United States? If so, what is that opinion?

3. Which of the following best describes your opinion
[please circle]:
    A.    I think that there should be more severe
        punishments against those persons who enter
        into and remain in the United States illegally.
    B.    I think that the punishment against those
        persons who enter into and remain in the
        United States illegally is about right.

C.     I think that person who enter into and remain in the United States illegally should not be punished as severely as they are now.

D.     I think that person who enter into and remain in the United States illegally should not be punished.

E.     My opinion depends on the individual circumstances of the situation, regardless of country of origin.

F.     My opinion depends largely on the country of origin.

G.     None of the above. My opinion is as follows:

4. Would your answer to the previous question be different if you considered persons from different countries? For example, would it make any difference in your answer if the immigrant was from Mexico, Guatemala, Italy, or Iran? Please explain:

As to question no. 1, 15 said yes; 58 said no; 2 didn't answer.

As to question no. 2, 60 answered yes and/or wrote their opinion. Common statements were: deport them; punish them; should not be allowed to work; taking jobs from citizens; immigration should be done legally; learn/speak English.

As to question no. 3, 48 answered "A"; 10 answered "B"; 10 answered "E"; 8 answered "G".

As to question no. 4, 65 said no; 9 didn't answer and one had concerns with people from Iran.

*Velazquez-Ramirez v. State*, Crawford Co. No. LACV035590, Ruling on Post-conviction Relief (Iowa Dist. Ct. Oct. 20, 2010) [hereinafter Iowa District Court PCR Ruling], Respondent's Appendix Doc. No. 22-1 at 37-38.

Voir dire for Velazquez's trial began on March 9, 2004, and was conducted in three groups of 16 prospective jurors and one group of four prospective alternate jurors. With the defendant's permission, the judge informed each group of Velazquez's status as an illegal alien and explained that he was entitled to rely on the same presumption of innocence as any other person who was charged with a crime in the United States. Trial Tr. 87-91, 233, 275-76, 432, 563. The judge, Thomas Gustafson (the prosecutor) and Williams questioned each group about their feelings on illegal immigration and whether they would be able to put aside those feelings and make a decision based solely on the evidence and the law as instructed. Trial Tr. 272-74, 324-26, 509-10. They emphasized that the trial had nothing to do with Velazquez's immigration status and needed to know if any prospective juror felt Velazquez's status as an illegal alien would influence his or her decision in any way. Several jurors were questioned individually and some were excused for cause based on their answers. Twelve jurors and two alternates were selected at the end of voir dire on March 12, 2004. The jury found Velazquez guilty of first-degree murder on March 19, 2004.

## B.     *Procedural Background*

### 1.     *State Court Proceedings*

#### a.     *Direct Appeal*

On appeal, Velazquez argued he was denied effective assistance of counsel by Williams' failure to "make an appropriately specific motion for judgment of acquittal to challenge the sufficiency of the evidence to establish malice aforethought . . . ." *State v. Valazquez-Ramirez*, 697 N.W.2d 127 (Iowa Ct. App. Mar. 31, 2005) (unpublished table decision). The Iowa Court of Appeals conducted *de novo* review and found that Williams had raised the issue of the sufficiency of the evidence to establish malice aforethought no less than four times and the district court had ruled on the issue on

several occasions. *Id.* Therefore, it found Williams' conduct did not amount to deficient performance or result in prejudice.

The Iowa Supreme Court granted review solely to discuss the issue of sufficiency of the evidence to sustain a finding of malice. It explained Velazquez had raised this issue in arguing the prejudice element of his ineffective assistance of counsel claim, but the Iowa Court of Appeals had not addressed it. *State v. Valazquez-Ramirez*, No. 04-0728, 707 N.W.2d 588 (Iowa Dec. 30, 2005) (unpublished table decision) (per curiam). Viewing the evidence most favorably to the State, the Court concluded that the evidence was sufficient beyond a reasonable doubt to sustain the jury's finding that Velazquez acted with malice. The Court affirmed the decision of the Iowa Court of Appeals and judgment of the district court.

### b.      Post-conviction Relief Proceedings

### i.      District Court Decision

Velazquez filed his petition for post-conviction relief on December 11, 2006. He was appointed a new attorney while preparing for trial and trial was continued several times for other reasons. The trial was eventually held on August 18, 2010. Velazquez advocated some issues *pro se* while his attorney advocated other issues. Williams was called as a witness at the trial and a compilation of letters and filings by Velazquez were admitted into evidence along with copies of portions of the jury questionnaire. The parties also stipulated that the trial transcripts and Williams' deposition would be part of the record. The Iowa District Court ruled on the following issues in its PCR decision:

> (1)   Ineffective assistance of counsel for his failure to secure a second attorney to represent Velazquez
> (2)   Ineffective assistance of counsel for his failure to obtain a psychological exam of Velazquez
> (3)   Ineffective assistance of counsel for failure to object to jury instructions regarding willful injury and not

applying *Heemstra* to Velazquez's case violated his equal protection rights

(4,5)  Ineffective assistance of counsel for presenting the juror questionnaire to potential jurors, failure to file motion in limine to exclude reference to Velazquez's citizenship status, and failure to file a motion to change venue

(6)  Ineffective assistance of counsel for failing to demand compliance with the Vienna Convention

(7)  Ineffective assistance of counsel for failing to file a motion to suppress Velazquez's statements to police based upon either the officers' failure to comply with the Vienna Convention or because he did not knowingly intelligently, and voluntarily waive his *Miranda* rights

Iowa District Court PCR Ruling, Doc. No. 22-1. The court found issues four and five[2] encompassed strategic decisions made by Williams based on his knowledge and experience, which did not amount to ineffective assistance of counsel. When asked why he did not pursue a motion for change of venue, Williams stated in his deposition:

Well, the problem with moving for a change of venue during the course of voir dire, essentially requires there to be a prima facie showing that there would be an impossibility or a significant improbability of being able to obtain a successful jury.

During the course of voir dire, it was my opinion—And I could have been wrong. Don't get me wrong, but I could have been wrong.

But my opinion was that there was not a basis for challenging any of those jurors for cause and that there was an insufficient showing of actual prejudice that those persons had against my client in this particular case. So the analysis at the time was that such a motion would be unsubstantiated.

---

[2] Because Velazquez continues to advocate only issues 4, 5 and 6, in his petition before this court, my summary of the Iowa District Court's ruling is limited to those issues.

Iowa District Court PCR Ruling, Doc. No. 22-1 at 38-39 (citing Williams dep. 12-13, 38). Velazquez's PCR attorney asked Williams if he would have considered seeking a change of venue if it had become clear during voir dire that prospective jurors were prejudiced against undocumented aliens. Williams answered that prejudice by itself would not have motivated him to seek a change of venue. He stated, "There has to be the additional connection that that consideration or that prejudice, first of all, could not be set aside and that it would be used in their consideration in this particular case. And I hope that I addressed those issues during the course of the voir dire." *Id.* Williams also explained why he did not file a motion for a change of venue based on the responses in the juror questionnaires. He stated:

> First of all, just because someone believes that someone who enters the United States illegally should be somehow generically punished more severely raises a red flag of concern, but it certainly does not rise to the level of proof of anything that would inure the prejudice of my client whether there's one or every single one of them. This was a red-flag questionnaire.

PCR Trial Tr. 42.

The court noted that changes in venue are allowed under Iowa Rule of Criminal Procedure 2.11(10)(b) when such a "degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa District Court PCR Ruling, Doc. No. 22-1 at 42. The court concluded:

> The jury questionnaire did not prove that the jurors could not impartially judge the merits of the case as the questionnaire did not address that question. The mere fact that a juror has an opinion about the illegal immigration issue does not demonstrate the way the juror feels about the merits of the case in question. Mr. Williams did not have any basis for requesting a change in venue as he did not have proof the jurors would not be able to impartially judge the issues.

*Id.* at 43.

As for the sixth issue alleging ineffective assistance of counsel for failing to demand compliance with the Vienna Convention, the court found that Velazquez was notified of his right to contact the Mexican Consulate and chose not to do so. The court further found that even if Williams had not notified Velazquez of this right, Velazquez had failed to demonstrate that he was prejudiced by Williams' alleged ineffective assistance. *Id.* at 46-47.

The court reasoned that Iowa courts have not ruled on whether the Vienna Convention creates an individual, enforceable right, but even if such a right exists, the defendant would have to prove actual prejudice because the right is not fundamental. The only evidence Velazquez provided of prejudice was the following statement:

> I did not know that I could contact my country's consulate. No one told me about that. And if I would have known let me know that I could do that, and if I would have been able to contact my country's consulate, I would have had a better opportunity to have a better trial because they could have given me legal advice and advised me and guided me regarding the laws of this country.

*Id.* at 45 (quoting Trial Tr. 15). The court concluded that even if Williams had failed to notify Velazquez of his right to contact the Mexican Consulate and even if that failure amounted to deficient performance, Velazquez had failed to show that he was prejudiced by that error. The court stated that he would have had to demonstrate that the contact would have resulted in assistance or affected the outcome of the trial to meet this prong.

### ii. *Appellate Court Decision*

Velazquez appealed the district court's decision and his counsel raised the following issues:

(1) Ineffective assistance of counsel for allowing the jury to become aware of Velazquez's immigration status

(2) Ineffective assistance of counsel for failing to properly investigate prejudice in the jury pool based on Velazquez's undocumented status

(3) Ineffective assistance of counsel for failing to request a change of venue

(4) Ineffective assistance of counsel for failing to raise the issue of compliance with Article 36 of the Vienna Convention.

Velazquez filed a *pro se* supplemental brief, but it was stricken as untimely. The Iowa Court of Appeals denied Velazquez's petition for post-conviction relief based solely on his inability to prove prejudice from any of the alleged actions or inactions of his counsel. It stated, "Based on the overwhelming evidence of Velazquez-Ramirez's guilt . . . there is no reasonable probability the result would have changed had Velazquez-Ramirez's trial attorney dealt differently with the cited issues relating to his immigration status." *Velazquez-Ramirez v. State*, 817 N.W.2d 31 (Iowa Ct. App. Apr. 25, 2012) (unpublished table decision).

### 2.  *Federal Proceedings*

In his petition before this court, Velazquez's counsel argues the state court unreasonably applied *Strickland* on the issue of ineffective counsel for failure to file a motion for change of venue. Doc. No. 17. Velazquez, *pro se*, argues the state court unreasonably applied *Strickland* on the following issues:

(1) Ineffective assistance of counsel for failing to properly investigate prejudice in the jury pool

(2) Ineffective assistance of counsel for failing to request a change in venue

(3) Ineffective assistance of counsel for failing to raise the issue of compliance with Article 36 of the Vienna Convention

(4)      Ineffective assistance of counsel for failure to make an appropriately specific motion for judgment of acquittal to challenge the sufficiency of the evidence to establish malice aforethought

(5)      Violation of petitioner's Fifth Amendment right due to petitioner's *Miranda* rights being ignored or unlawfully circumvented

Doc. No. 19.

## II.    STANDARD OF REVIEW

Velazquez brings this petition pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under AEDPA, federal courts apply a "deferential standard of review" to the state court's determinations of law and fact if the state court adjudicated the claim on the merits. *Taylor v. Bowersox*, 329 F.3d 963, 967-68 (8th Cir. 2003). Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Velazquez brings his petition under section 2254(d)(1). There are two categories of cases under this section that may provide a state prisoner with grounds for federal habeas relief: (1) if the relevant state-court decision was "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) if the relevant state-court decision "involved an *unreasonable application* of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1) [emphasis added]).

A state court can violate the "unreasonable application" clause of section 2254(d)(1) in two ways: (a) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (b) where "the State court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

The state court reviews a post-conviction relief petition based on ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, the person challenging a conviction must show that (1) counsel provided deficient assistance to the extent that "counsel's representation fell below an objective standard of reasonableness" and (2) there was prejudice as a result. *Id.* at 688. The errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and the defendant was deprived of a fair trial. *Id.* at 687. The court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Federal habeas courts must then find that a state court's application of *Strickland* was unreasonable under section 2254(d) to grant habeas relief. This is also a highly deferential inquiry because "[a] state court must be granted a deference and latitude that

are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Therefore, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).

For a claim to be successful under section 2254(d)(1), "[i]t is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable." *Jones v. Wilder-Tomlinson*, 577 F. Supp. 2d 1064, 1073 (N.D. Iowa 2008) (Bennett, J.) (citing *Williams,* 529 U.S. at 411; *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("an unreasonable application is different from an incorrect one.")). *See Ringo v. Roper*, 472 F.3d 1001, 1003 (8th Cir. 2007) (same). "[A] federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent." *Jones*, 577 F. Supp. 2d at 74 (citing *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)); *see Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (to be overturned, the state court's application of federal law must have been "objectively unreasonable") (citing *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005)).

The petitioner bears the burden of showing that the state court's ruling on the claim presented was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v.*

*Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

## III.  DISCUSSION

**A.  Failure to Investigate Prejudice in Jury Pool and File Motion for Change of Venue**

### 1.  Argument and Summary of Iowa Court of Appeals Decision

Velazquez argues *pro se* that Williams provided ineffective assistance of counsel by failing to investigate prejudice in the jury pool.  Both Velazquez and his counsel argue that the state courts unreasonably applied *Strickland* by finding that Williams' failure to file a motion for change of venue did not result in ineffective assistance of counsel.  They contend that based on the prospective jurors' responses in the questionnaires, Williams should have filed a motion for change of venue and failure to do so amounted to deficient performance and resulted in prejudice.  Because these arguments are related, I will address them together.

The state courts reached their conclusions on these claims based on different prongs of *Strickland*.  The Iowa District Court concluded Williams made a strategic decision not to file a motion for change of venue based on his experience and knowledge and his assistance did not fall below that of a reasonably competent attorney. The Iowa Court of Appeals denied relief on this claim (and all other claims) because Velazquez could not demonstrate prejudice due to the overwhelming evidence of his guilt.[3]  Because the Iowa Court of Appeals decision was the "last reasoned decision" of the state courts, I must review that decision to determine whether it was contrary to or involved an unreasonable application of *Strickland*.  *See Worthington v. Roper*, 631 F.3d 487, 497 (8th Cir. 2011).

---

[3] The Iowa Court of Appeals rejected Velazquez's claim that prejudice should be presumed in this situation citing *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984) where the Court limited the presumption of prejudice to situations where "counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceeding."

To establish *Strickland* prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 131 S. Ct. at 791.

The Iowa Court of Appeals found that Velazquez could not demonstrate that the result of the proceeding would have been different but for his counsel's alleged errors due to the overwhelming evidence of his guilt. Under AEDPA, I must determine whether this decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 404-05 (quoting 28 U.S.C. § 2254(d)(1)).

Velazquez argues that the Iowa Court of Appeals unreasonably applied *Strickland* because he only needs to demonstrate that the trial judge would have granted a motion for change of venue if his counsel had filed one in order to establish prejudice. Respondent disagrees. He argues that the Iowa Court of Appeals reasonably applied *Strickland* in requiring Velazquez to demonstrate that a different jury likely would have reached a different verdict. He cites *Wright v. Nix*, 928 F.2d 270, 273 (8th Cir. 1991), a case involving defense counsel's failure to object to the allegedly race-based striking of certain prospective jurors. *Id.* The petitioner argued that he only needed to show that a different, impartial jury would have been seated but for his counsel's error in order to establish prejudice. *Id.* The court disagreed stating "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* (quoting *Strickland*, 466 U.S. at 691). The court concluded that even if the petitioner had demonstrated that his counsel's conduct was professionally unreasonable, he was unable to show that this error had an effect on the judgment. *Id.*

The Iowa Court of Appeals interpreted "result of the proceeding" to mean the outcome of Velazquez's trial by stating that due to the overwhelming of guilt he could not show a reasonable probability that the result would have changed but for his counsel's alleged errors. The court cited *Strickland* in support of this interpretation in which the Supreme Court stated, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." 466 U.S. at 696.

### 2.    *Prejudice Standard*

I must determine whether the Iowa Court of Appeals decision was contrary to or involved an unreasonable application of clearly established federal law. Because the parties disagree over whether the Iowa Court of Appeals reasonably applied the *Strickland* standard of prejudice, I must first determine what that standard is in the context of the alleged errors. In *Strickland*, the Court emphasized that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696.    In discussing prejudice, the Court noted:

> The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
>
> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the

> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and factual
> findings that were affected will have been affected in
> different ways. Some errors will have had a pervasive effect
> on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an
> isolated, trivial effect. Moreover, a verdict or conclusion
> only weakly supported by the record is more likely to have
> been affected by errors than one with overwhelming record
> support. Taking the unaffected findings as a given, and
> taking due account of the effect of the errors on the
> remaining findings, a court making the prejudice inquiry
> must ask if the defendant has met the burden of showing that
> the decision reached would reasonably likely have been
> different absent the errors.

*Id*. at 695-96. The errors at issue in *Strickland* were counsel's failure to investigate and

present mitigating evidence at the defendant's sentencing where he was facing a death

sentence. *Id*. at 675-76. The Court considered whether there was a reasonable

probability that the trial judge who sentenced the defendant would have concluded that

the balance of aggravating and mitigating circumstances did not warrant death, but for

counsel's alleged errors. *Id*. at 695. It concluded that there was no reasonable

probability that the omitted evidence would have changed the conclusion that the

aggravating circumstances outweighed the mitigating circumstances and therefore, the

same sentence would have been imposed regardless of the alleged errors. *Id*. at 700.

*Strickland*'s instruction that the governing legal standard surrounding the alleged

errors defines the prejudice inquiry has been exemplified in recent Supreme Court

decisions. For example, in *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009), the

alleged error was counsel's advice to defendant to withdraw his plea of not guilty by

reason of insanity. A jury heard evidence of the defendant's mental condition during

the first phase of the trial and found him guilty of first-degree murder. *Id*. at 114. To

establish prejudice from his counsel's alleged error, the Court required the defendant to

show a reasonable probability that he would have prevailed on his insanity defense had he pursued it in the second phase of trial. *Id.* at 127. To prevail on his insanity defense, the defendant would have had to prove insanity by a preponderance of the evidence. *Id.* at 125. In *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), the alleged error was counsel's advice to petitioner to reject a plea offer. The petitioner was subsequently convicted at trial and received a sentence three and a half times more severe than he likely would have by pleading guilty. *Id.* at 1386. The prejudice inquiry required the petitioner to demonstrate a reasonable probability that he and the trial court would have accepted the guilty plea but for his counsel's deficient performance. *Id.* at 1391.

The Supreme Court has not yet considered a case under *Strickland*'s prejudice inquiry where the alleged error was counsel's failure to file a motion for change of venue or investigate prejudice in the jury pool. However, several lower courts have considered the prejudice standard in this context and have reached different conclusions about what constitutes prejudice under *Strickland*. *See Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (petitioner needed to bring forth evidence demonstrating there was a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if his counsel had presented such a motion to the court."); *Deiterman v. Kansas*, 291 Fed. Appx. 153, 159 (10th Cir. 2008) (finding the state appellate court's adjudication of the prejudice prong was not contrary to nor an objectively unreasonable application of *Strickland* when it found petitioner failed to establish a reasonable probability that his trial counsel would have succeeded on a renewed change of venue motion); *Williams v. Franke*, No. 6:01-cv-00812-AA, 2013 WL 3819868, at *4 (D. Or. July 22, 2013) ("a criminal defendant cannot simply conclude that the failure to file a motion to change venue would have affected the outcome of his case; rather, he must show that the jury would have had reasonable doubt as to his guilt"); *Blackmon v. Ballard*, 2:09-CV-00789, 2010 WL 3703031 (S.D. W. Va. Aug. 2, 2010) *report and recommendation adopted* CIV.A. 2:09-0789, 2010

WL 3702705 (S.D. W. Va. Sept. 13, 2010) ("In order to prove prejudice, the Petitioner would have to prove that had the venue of his trial been moved, he would have been acquitted.").

A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-09. It may also involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75 (citing *Williams*, 529 U.S. at 410). The state court's application of clearly established law must have been objectively unreasonable. *Id.*

### 3. *Review of Iowa Court of Appeals Decision*

I find that the Iowa Court of Appeals correctly identified *Strickland* as the governing rule, but unreasonably applied it by requiring Velazquez to show a reasonable probability that the outcome of his trial would have been different. As established in *Williams*, a state court decision can result in an unreasonable application of federal law if the state court unreasonably refused to extend a legal principle from Supreme Court precedent to a new context where it should apply. The legal principle the Iowa Court of Appeals should have extended to this context is that the prejudice inquiry depends on the context of the alleged errors as set forth in the holdings of *Strickland*, *Knowles* and *Lafler*. Instead, the Iowa Court of Appeals used an outcome-determinative approach to evaluate prejudice for all the alleged errors. The Supreme Court has stated "an analysis focusing solely on mere outcome determination, without

20

attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Requiring Velazquez to also prove that he would have been acquitted (or convicted of a lesser charge) in that new venue goes far beyond the appropriate, context-specific inquiry. As Judge Bennett recently explained:

> [I]t is a well-established principle of Supreme Court law that the "probability of a different outcome" must be considered in the context of the specific errors of counsel that are alleged. Thus, while the Iowa Supreme Court may properly have held in *Ledezma v. State*, 626 N.W.2d 134 (Iowa 2001), that the standard for "prejudice" from trial counsel's deficient performance in failing to investigate and present evidence and refusing to call the defendant to testify to support a theory of defense was whether there was a "reasonable probability of a different verdict, or that the fact finder would have possessed reasonable doubt," 626 N.W.2d at 144, that is not the proper standard in all cases. It is only when the allegedly deficient performance concerns the evidence that defense counsel should have developed and presented, or should not have developed and presented, that the ultimate outcome of the proceedings, that is, the conviction or the sentence, is the "outcome of proceedings" at issue, and only then that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695, 104 S. Ct. 2052.

*Escobedo v. Lund*, ___ F. Supp. 2d ___, 2013 WL 2420842, at *36 (N.D. Iowa June 3, 2013). He further noted:

> Were the test of "prejudice" from deficient performance of counsel only and always whether or not there was a reasonable probability of ultimate conviction, the right to counsel would be nugatory for all but innocent defendants. That is not, and has never been, our understanding of the right to counsel or any other constitutional right of a criminal defendant.

*Id.* at *38 [citation omitted].[4]

---

[4] To the extent that *Wright* may seem to require a different conclusion, I hold that *Lockhart, Knowles* and *Lafler* – all of which were decided after *Wright* – are controlling. Those cases make it clear that prejudice under *Strickland* is a context-specific analysis that does not automatically require proof that the final outcome of the case would have been different.

Simply put, to demonstrate prejudice Velazquez does *not* have to establish that the verdict would have been different if the venue of his trial had been moved. He must, instead, demonstrate a reasonable probability that the trial judge would have granted a motion to change venue.[5] Under Iowa law, a change of venue is warranted when there is such a degree of prejudice in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury from that county. Iowa R. Crim. P. 2.11(10). Thus, Velazquez must show there is a reasonable probability that the trial judge would have found, if asked, that there was a substantial likelihood that Velazquez could not have received a fair trial in Crawford County.

If Velazquez can make this showing, prejudice is rather obvious. The Sixth Amendment guarantees a trial "by an impartial jury." U.S. Const. amend VI. The Supreme Court has said that to establish prejudice under *Strickland*, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88. If counsel's failure to file a motion for change of venue caused Velazquez to be tried by jurors who were unlikely to be impartial, then he did not receive a fair trial. By contrast, if Velazquez cannot show a reasonable probability that the trial judge would have granted a motion to change venue, then he has not shown that "such a degree of prejudice" existed in the jury pool that there was a "substantial likelihood a fair and impartial jury" could not be empaneled. In that case, he did not suffer prejudice due to his counsel's alleged errors of failing to investigate prejudice in the jury pool or to request a change of venue.

---

[5] As for the alleged error of failure to investigate prejudice in the jury pool, that error would require petitioner to demonstrate a reasonable probability that counsel would have discovered prejudice in the jury pool and taken steps to assure a non-biased jury was selected. In this case, Velazquez contends that the appropriate action was a motion for change of venue.

#### 4.    *De Novo Review*

Because the Iowa Court of Appeals unreasonably applied *Strickland* in analyzing the prejudice prong, I must now review that prong *de novo* applying the correct standard as set forth above.  *See Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013) ("AEDPA permits *de novo* review in those rare cases when a state court decides a federal claim in a way that is "contrary to" clearly established Supreme Court precedent); *Richter*, 131 S. Ct. at 770 (acknowledging that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of clearly established federal law").

As noted above, under Iowa law a motion for change of venue will be granted if "such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa R. Crim. P. 2.11(10).  The court may change venue on its own motion or on a motion of the parties when it appears from jury selection that sufficient grounds exist to grant the change in venue.  Iowa Code § 803.2(2).  The Iowa Supreme Court has held that the crucial determination in this analysis is whether "a substantial number of prospective jurors hold such fixed opinions on the *merits of the case* that they cannot impartially judge the issues to be determined at trial." *State v. Harris*, 436 N.W.2d 364, 367 (Iowa 1989) [emphasis added].

Velazquez argues that if his attorney had properly investigated prejudice in the jury pool and filed a motion for change of venue, he would have discovered biased jurors and the trial judge would have granted the motion to change venue.  Velazquez relies on the responses in the juror questionnaires and the judge's comments about the questionnaires for support.  During voir dire, the judge stated:

> Now, the last thing I want to talk about today is most of you filled out a survey that the clerk of court sent out which dealt with the subject of illegal aliens, I guess, primarily. And I guess the Court was concerned that a substantial number of the answers – and I'm not talking about your

specific answers – but out of the 72 or 3 people that were on the overall panel, indicated some fairly strong – I'll use the word "resentment" for lack of another word, towards Hispanic people who are here unlawfully. The defendant in this case, Mr. Velazquez, is an illegal alien. And I guess I'm not going to lecture you and I'm not going to try to change any of your opinions about anything. However, I want you to understand this case is about a set of facts and circumstances that were alleged to have occurred on a certain night in Crawford County, Iowa, and the fact that Mr. Velazquez is or is not an illegal alien doesn't change the law that applies to these facts and it doesn't change the potential guilt or innocence regarding these facts. The color of his skin makes no difference, the nationality makes no difference. The only thing that matters is whether or not these facts were as the State alleges they were and whether those facts fit into the law as I give you. And so I need to know if the fact that Mr. Velazquez is an illegal alien is going to negatively impact your judgment in this case and if you're going to look at him as a foreigner or look at him as an illegal alien rather than as a defendant with the right to rely on the presumption of innocence that we have in this country for whoever is charged with a crime.

Trial Tr. 87-88. During voir dire of a different group of prospective jurors, the judge remarked:

I stopped questioning you at one time, but sitting here looking at some of the questionnaires – And a few of you answered some of these questionnaires about the illegal immigrant situation; that you thought there should be harder penalties and you thought they should be sent back from where they came. Quite a few of you, I think, were fairly supportive of immigrants, as long as they were legal immigrants and were pretty hard on people if they were illegal immigrants.

Trial Tr. 275-76. Velazquez argues that these comments by the trial judge demonstrated he was concerned about prejudice in the jury pool and if Williams had made a motion for a change of venue, it is likely the court would have granted it.

I find that this evidence does not demonstrate a reasonable probability that further investigation would have revealed prejudice in the jury pool or that the trial judge would have granted a motion for change of venue. The questionnaire did not provide a basis *by itself* to justify a motion for change of venue. The questionnaire asked about prospective jurors' feelings towards issues related to illegal immigration, not the merits of the case. During the PCR trial, Williams indicated that this was a "red flag questionnaire" which would allow him to inquire further into any bias he found in a prospective juror's responses during voir dire. PCR Trial Tr. 42. Indeed, a significant portion of voir dire consisted of the judge, Gustafson and Williams asking prospective jurors individually about their opinions on illegal immigration issues and if they would be able to set aside any of those feelings and make a decision based solely on the evidence presented at the trial. This is the preferred method for investigating prejudice. *See United States v. Bear Runner*, 502 F.2d 908, 912-13 (8th Cir. 1974) ("the better practice in a sensitive case is to direct probing questions touching areas of possible prejudice to each individual juror, with the questions to be asked by the trial judge or counsel."). Prospective jurors who indicated they would have difficulty with this were excused for cause. Trial Tr. 230, 379, 579-81.

Voir dire was extensive and thorough. Prospective jurors were divided into groups of 16 and each group was questioned separately. It began at 1:20 p.m. on March 9, 2004, and continued all day on March 10, 11 and 12. Trial Tr. 37-609. Williams testified at the PCR trial that he was not constrained or inhibited by the trial judge in questioning the prospective jurors and felt comfortable in his assessment of the prospective jurors. PCR Trial Tr. 60.

When asked why he did not file a motion for change of venue, Williams responded:

Well, the problem with moving for a change of venue during the course of the voir dire, essentially requires there to be a prima facie showing that there would be an impossibility or a significant improbability of being able to obtain a successful jury.

During the course of voir dire, it was my opinion –And I could have been wrong. Don't get me wrong, but I could have been wrong.

But my opinion was that there was not a basis for challenging any of those jurors for cause and that there was an insufficient showing of actual prejudice that those persons had against my client in this particular case. So the analysis at the time was that such a motion would be unsubstantiated.

Williams dep. 12. Williams also stated that if it had become clear during voir dire that prospective jurors were prejudiced against his client, he would not have necessarily been persuaded to move for a change of venue. He explained, "There has to be the additional connection that that consideration or that prejudice, first of all, could not be set aside and that it would be used in their consideration in this particular case. And I hope that I addressed those issues during the course of the voir dire." Williams dep. 13.

Based on this record, I find Velazquez is unable to demonstrate prejudice under *Strickland*. He has not shown a reasonable probability that further investigation by Williams would have revealed prejudice in the jury or that the trial judge would have granted a motion for change of venue if Williams had filed one. While the juror questionnaires indicated a majority of prospective jurors had strong feelings on illegal immigration, those questionnaires did not demonstrate prejudice towards Velazquez or with regard to the merits of the case. The trial judge, Gustafson and Williams all understood the significance of seating an impartial jury and conducted an extensive voir dire. Each group of prospective jurors was instructed by the trial judge that

Velazquez's immigration status was not at issue in the case and he was entitled to a fair trial based on the evidence presented and law as instructed. Prospective jurors were asked if Velazquez's nationality would affect their view of the case and if they could put aside any feelings they had about illegal immigration. None of the prospective jurors who were selected indicated that they would not be able to put Velazquez's immigration status aside or would be unable to decide the case based solely on the evidence presented and the law as instructed. The record demonstrates Williams sufficiently investigated prejudice in the jury pool and the extensive voir dire conducted by the trial judge, Gustafson and Williams, made it unlikely that a motion for change of venue would have been granted.

Because Velazquez is unable to demonstrate prejudice under *Strickland*, I find it unnecessary to consider whether Williams' conduct amounted to deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 16 (2009) (per curiam) ("To prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*."). Velazquez's claims of ineffective assistance of counsel for failure to investigate prejudice in the jury pool and failure to file a motion for change of venue are denied.

### B.   *Failure to Raise Issue of Compliance with Article 36 of Vienna Convention*

### 1.   *Argument and Summary of Iowa Court of Appeals Decision*

Velazquez argues *pro se* that Williams provided ineffective assistance of counsel by failing to raise the issue of compliance with Article 36 of the Vienna Convention. The relevant part of this Article provides:

> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person

> arrested, in prison, custody, or detention shall also be
> forwarded by the said authorities without delay. The said
> authorities shall inform the person concerned without delay
> of his rights under this sub-paragraph;

Vienna Convention on Consular Relations art. 36, Apr. 24, 1963, 21 U.S.T. 77. Velazquez does not argue that his counsel failed to inform him of his rights under this Article, but argues that his counsel's failure to "take some action to remedy the fact that the local authorities had not informed the Petitioner of his rights" amounted to ineffective assistance. Velazquez argues he should have been informed of his rights under Article 36 before he was detained and questioned, but he was not. He contends that had he been informed of the right to notify the consulate he would have done so. Moreover, he contends that the consulate would have assisted him in obtaining counsel and advised him of his *Miranda* rights and the consequences of waiving them. Velazquez offers no specific remedies he thinks his attorney should have pursued to remedy this alleged violation.

Respondent argues Velazquez would need to demonstrate actual prejudice as a result of the Vienna Convention violation because it arguably does not create an individually enforceable right, and even if it does, it is not a fundamental right. Actual prejudice would require Velazquez to show: (1) he did not know of the right to consular access; (2) he would have availed himself of the right had he known of it, and (3) contact with the consulate likely would have resulted in assistance. *See* Doc No. 22 at 20-21 (citing *State v. Lopez*, 633 N.W.2d 774, 783 (Iowa 2001)). Respondent suggests Velazquez would have to meet this definition of actual prejudice in addition to showing deficient performance and prejudice under *Strickland* because he addresses the alleged error through an ineffective assistance of counsel claim.[6]

---

[6] I disagree with Respondent on this issue. Because Velazquez raises the alleged Vienna Convention violation only as an ineffective assistance of counsel claim, and not as a separate claim for relief, the "actual prejudice" requirement does not apply. Instead, Velazquez must

As explained above, the Iowa Court of Appeals denied all of Velazquez's claims of ineffective assistance of counsel stating, "Based on the overwhelming evidence of Velazquez-Ramirez's guilt . . . there is no reasonable probability the result would have changed had Velazquez-Ramirez's trial attorney dealt differently with the cited issues relating to his immigration status." *Velazquez-Ramirez v. State*, 817 N.W.2d 31 (Iowa Ct. App. Apr. 25, 2012) (unpublished table decision).

### 2. *Review of Iowa Court of Appeals Decision*

I must determine whether the Iowa Court of Appeals' adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . ." *Richter*, 131 S. Ct. at 783-84. A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-09. It may also involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75 (citing *Williams*, 529 U.S. at 410)). The state court's application of clearly established law must have been objectively unreasonable. *Id.*

I again find the Iowa Court of Appeals decision resulted in an unreasonable application of federal law. As with Velazquez's other ineffective assistance of counsel

---

establish that his counsel's performance was deficient and that the deficiency caused prejudice within the meaning of *Strickland*. For purposes of the prejudice inquiry, I will assume that Velazquez's trial counsel failed to take some action with regard to the Vienna Convention.

claims, the Iowa Court of Appeals required Velazquez to demonstrate a reasonable probability that the result of his trial would have been different. This was an unreasonable application of federal law because it failed to apply *Strickland* in the context of the alleged error, which is a clearly established legal principle as set forth in cases such as *Knowles* and *Lafler* discussed *supra* Part III.A.2. Because Velazquez did not identify a specific remedy his counsel should have pursued, the context of this alleged error requires the court to evaluate whether any potential remedy his counsel could have pursued would have been successful *and* whether it would have changed the outcome of his trial. Unlike the alleged error of failure to file a motion for change of venue, this alleged error did not interfere with a constitutional right, such as the right to trial "by an impartial jury."[7] Therefore, prejudice in the context of this alleged error requires the petitioner to demonstrate a reasonable probability that an appropriate motion would have been granted *and* that the success of that motion would have changed the outcome of the trial.

### 3. *De Novo Review*

Because the Iowa Court of Appeals unreasonably applied *Strickland* in analyzing the prejudice prong, I must now review that prong *de novo* applying the correct standard as set forth above. *See Johnson*, 133 S. Ct. at 1097 ("AEDPA permits *de novo* review in those rare cases when a state court decides a federal claim in a way that is "contrary to" clearly established Supreme Court precedent); *Richter*, 131 S. Ct. at 770 (acknowledging that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of clearly established federal law").

---

[7] In fact, the Supreme Court has been reluctant to decide whether the Vienna Convention creates an enforceable individual right. *See Breard v. Greene*, 523 U.S. 371, 376 (1998) (per curiam) (stating the Vienna Convention "arguably confers on an individual the right to consular assistance following an arrest" and proceeding under the assumption that it does).

*Strickland* prejudice in the context of this error requires Velazquez to demonstrate a reasonable probability that any remedy or motion his counsel could have pursued would have been successful and would have changed the outcome of his trial. I find that Velazquez has not met this standard because any remedy his counsel could have pursued would have been futile or had no effect on the evidence presented to the jury at Velazquez's trial.

One potential remedy Velazquez's counsel could have pursued that would have potentially affected the evidence before the jury is a motion to suppress. However, the Supreme Court has held that "suppression is not an appropriate remedy for a violation of Article 36." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 337 (2006). It reasoned:

> The violation of the right to consular notification, in contrast, is at best remotely connected to the gathering of evidence. Article 36 has nothing whatsoever to do with searches or interrogations. Indeed, Article 36 does not guarantee defendants *any* assistance at all. The provision secures only a right of foreign nationals to have their consulate *informed* of their arrest or detention—not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention. In most circumstances, there is likely to be little connection between an Article 36 violation and evidence or statements obtained by police.

*Id.* at 349 [emphasis in original]. In *Sanchez-Llamas*, the petitioner appealed the denial of his motion to suppress statements he made to police based on their failure to inform him of his right to notify the consulate under Article 36. *Id.* at 340. The Court upheld the denial finding that neither the Vienna Convention nor the Court's precedents applying the exclusionary rule supported suppression as a remedy for the alleged violation. *Id.* at 350. Based on this unfavorable precedent, a suppression motion based on the alleged Article 36 violation likely would have been unsuccessful and therefore

counsel's alleged error of failing to file a suppression motion on this basis had no effect on the outcome of his trial.

Besides suppression, the only other apparent remedy Velazquez's counsel could have pursued for an Article 36 violation that could also have affected the outcome of the case would have been a dismissal of the indictment. This avenue would have been equally futile. *See e.g., United States v. De La Pava*, 268 F.3d 157, 165-66 (2d Cir. 2001) (noting that dismissal of an indictment is an "extraordinary remedy" reserved only for extremely limited circumstances implicating fundamental rights and the right to consular notification is not a fundamental right); *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000) (denying dismissal of the indictment as a remedy for a Vienna Convention violation because treaty's text does not provide for it).

Other remedies for Vienna Convention violations include having counsel inform the defendant of his right to contact the consulate or notifying the trial judge of the violation so he could inform the defendant of his right and make the appropriate accommodations for him to contact the consulate. *See Osagiede v. United States*, 543 F.3d 399, 412 (7th Cir. 2008) (discussing the possible remedies a lawyer can pursue when there is an Article 36 violation). Although there is a reasonable probability that these remedies would have been successful, they would have had no effect on the outcome of Velazquez's trial.

Because Velazquez is unable to establish prejudice, I find it unnecessary to analyze whether the failure to raise the issue of compliance with the Vienna Convention amounted to deficient performance. *See Wong*, 558 U.S. at 16 ("To prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*."). Habeas relief based on Velazquez's claim of ineffective assistance of counsel from his counsel's failure to raise the issue of compliance with the Vienna Convention is denied.

**C.** **Failure to Challenge Sufficiency of the Evidence to Establish Malice Aforethought in Motion for Judgment of Acquittal**

**1.** **Argument and Summary of State Court Decisions**

Velazquez argues *pro se* that his counsel provided ineffective assistance of counsel by failing to make an appropriately specific motion for judgment of acquittal based on the sufficiency of the evidence of malice aforethought. This issue was raised on direct appeal instead of post-conviction proceedings.

The Iowa Court of Appeals considered a motion for judgment of acquittal that Williams made at the close of the State's case, as well as a joint motion for new trial and motion in arrest of judgment after the jury trial. The court rejected Velazquez's ineffective assistance of counsel claim and affirmed his conviction. It stated that a *de novo* review of the record revealed that Williams raised the issue no less than four times and the district court ruled against Velazquez on this issue on several occasions. The court concluded "it cannot be said that his trial counsel failed in an essential duty in not raising the issue or that Velazquez was prejudiced by any such failure." *State v. Valazquez-Ramirez*, 697 N.W.2d 127 (Iowa Ct. App. Mar. 31, 2005) (unpublished table decision). Velazquez submitted an application for further review to the Iowa Supreme Court raising this same issue.

The Iowa Supreme Court granted review, but only to consider the issue of whether there was sufficient evidence to support a conviction of first-degree murder. *State v. Velazquez*, No. 04-0728, 707 N.W.2d 588, at *1 (Iowa Dec. 30, 2005) (per curiam). The Court noted that Velazquez had raised the issue of whether there was sufficient evidence to sustain a conviction of first-degree murder in arguing the prejudice element of his ineffective assistance of counsel claim. Because the Iowa Court of Appeals rejected Velazquez's ineffective assistance of counsel claim and affirmed his conviction without discussing the sufficiency of the evidence to sustain a finding of malice, the Supreme Court granted further review to consider that issue, noting that it may not have been properly preserved. The Court found the evidence

was sufficient to sustain the jury's finding of malice. Because the Iowa Supreme Court only took up the issue of whether there was sufficient evidence to sustain a conviction of first-degree murder, the Iowa Court of Appeals decision represents the "last-reasoned decision" of the state courts on the ineffective assistance of counsel claim that Velazquez raises here. *See Worthington*, 631 F.3d at 497.

The Iowa Court of Appeals denied Velazquez's ineffective assistance of counsel claim based primarily on the deficient performance prong, although it stated Velazquez was unable to establish either prong. I must determine if this decision was contrary to or involved an unreasonable application of *Strickland*. *Richter*, 131 S. Ct. at 783-84.

### 2. *Review of Iowa Court of Appeals Decision*

To establish deficient performance under *Strickland*, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. My review of the Iowa Court of Appeals' decision is "doubly deferential." *Knowles*, 129 S. Ct. at 1413 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam)). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S. Ct. at 785-86.

I find that the Iowa Court of Appeals reasonably applied *Strickland* in holding that Velazquez had not demonstrated deficient performance by Williams' alleged failure to challenge the sufficiency of the evidence to establish malice aforethought in a motion for judgment of acquittal. As the Iowa Court of Appeals noted, Williams did make a motion for judgment of acquittal at the close of the State's case in which he argued, "[T]he State has failed to show requisite specific intent or raise sufficient evidence so as to base a reasonable jury to conclude beyond a reasonable doubt there was a sufficient

showing of specific intent by Mr. Velazquez." *State v. Valazquez-Ramirez*, 697 N.W.2d 127 (Iowa Ct. App. Mar. 31, 2005) (unpublished table decision). The trial judge denied the motion finding that "the State has produced sufficient evidence of each of the elements of Murder in the First Degree to create a jury question." *Id.* The court also considered Williams' joint "motion for new trial and motion in arrest of judgment" in which he set forth the following propositions:

> (1) "Although most of the elements to the crime alleged were admitted, the crucial element concerning malice was denied ... there was *no evidence to establish malice* "; (2) "The defendant submits the jury *had no evidence whatsoever* upon which to rely rationally that there was any malice on the part of the Defendant"; (3) "Here, *the evidence presented by the State lacked* showing any level of malice by the Defendant ..."; (4) "Defendant avers *that the evidence herein was insufficient* .... There was *insufficient evidence* for any reasonable trier of fact to conclude beyond a reasonable doubt that the Defendant acted with malice here."

*Id.* [emphasis added by Iowa Court of Appeals]. Finally, the court considered Williams' argument at the sentencing hearing where the motion in arrest of judgment was taken up. Williams summarized his argument by stating, "Basically, we believe that the State failed to show competent evidence of malice and primarily it's malice – particularly malice aforethought in the commission of this offense." *Id.*

Based on this evidence, the Iowa Court of Appeals reasonably concluded that Williams' conduct did not fall below an objective standard of reasonableness and thus, did not result in ineffective assistance of counsel. Because the Iowa Court of Appeals reasonably applied *Strickland* in finding there was no deficient performance, it is unnecessary to evaluate its decision with regard to prejudice. *See Wong*, 558 U.S. at 16 ("To prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*."). Habeas relief on this claim is denied.

## D.    *Failure to File Motion to Suppress Based on* **Miranda** *Violation*

Velazquez argues *pro se* that Williams provided ineffective assistance of counsel for failing to file a motion to suppress based on an alleged violation of his *Miranda* rights. Respondent argues this claim is procedurally defaulted because it was not raised in the state post-conviction appeal. Velazquez does not address this argument in his *pro se* reply brief and discusses all other issues in his reply brief except for this one. Doc. No. 25. I will consider respondent's argument that this claim is procedurally barred from consideration before reviewing it on the merits.

Federal courts may not grant an application for a writ of habeas corpus to a state prisoner unless "the applicant has exhausted the remedies available in the courts of the State" or "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). A claim must go through one complete round of state-court review, either on direct appeal from the conviction or in post-conviction proceedings. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (citing *Boerckel*, 526 U.S. at 845).

On direct appeal, Velazquez only raised the issue of his counsel's failure to make an adequate motion for acquittal based on the lack of evidence establishing malice. In his PCR action, Velazquez pursued the claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress on grounds of a *Miranda* violation among others. This claim and the Vienna Convention claim were adjudicated on the merits by the district court. On appeal, Velazquez's counsel raised the issues of (1) ineffective assistance of counsel in allowing the jury to become aware of Velazquez's immigration status, failing to properly investigate prejudice in the jury pool and failing request a change of venue and (2) ineffective assistance of counsel in failing to raise the

issue of compliance with Article 36 of the Vienna Convention on Consular Relations. Velazquez filed a *pro se* supplemental brief, but it was stricken as untimely.[8]

Because Velazquez did not raise his claim of ineffective assistance of counsel for failure to file a motion to suppress based on a *Miranda* violation in his appeal, that claim is procedurally barred. *Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005). I can only consider the merits of this claim if Velazquez "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Velazquez does not attempt to demonstrate cause for this procedural defect or to show that the failure to consider this claim will result in a fundamental miscarriage of justice. There is also nothing in the record to support either finding. Because I do not find cause for the procedural default of this claim, I need not address the issue of prejudice. Velazquez's claim of ineffective assistance of counsel for failure to file a motion to suppress based on a *Miranda* violation is procedurally barred and will not be considered.

## IV.    CONCLUSION

For the reasons set forth above, **IT IS RESPECTFULLY RECOMMENDED** that Velazquez-Ramirez's petition pursuant to 28 U.S.C. § 2254 (Doc. No. 1) be **denied**.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the

---

[8] After the appeal was decided, Velazquez filed a *pro se* application for further review with the Iowa Supreme Court that raised the *Miranda* issue. Doc. No. 15-1 at 4. The Supreme Court denied further review.

parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 23rd day of October, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE