**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

ESTEBAN VELAZQUEZ-RAMIREZ,

                Petitioner,

vs.

JOHN FAYRAM,

                Respondent.

No. C12-4065-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HEABEAS CORPUS**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION AND BACKGROUND**............................................2
    *A.*    *Factual Background* ...................................................2
    *B.*    *Procedural Background* .............................................5
        *1.*    *State proceedings* .............................................5
        *2.*    *Federal proceedings*.........................................8

II.    **LEGAL ANALYSIS** .............................................................10
    *A.*    *Review Of A Report And Recommendation*...................... 10
    *B.*    *Federal Habeas Relief* ............................................ 13
        *1.*    *"Exhausted" and "adjudicated" claims*............................. 15
            *a.*    *The "Exhaustion" and "adjudication" requirements* ...................................... 15
            *b.*    *Limitations on relief on "exhausted" claims* ............... 17
        *2.*    *The § 2254(d)(1) standards* ....................................... 18
            *a.*    *The "contrary to" clause* ....................................... 18
            *b.*    *The "unreasonable application" clause* ..................... 19
            *c.*    *The effect of § 2254(d)(1) deficiencies in the state court decision* .............................................. 20
        *3.*    *The § 2254(d)(2) standard* ............................................ 21
        *4.*    *De novo review of issues not reached by the state court* ............................................................................. 22

  C. *"Clearly Established Federal Law" Regarding Ineffective*
    *Assistance Of Counsel* ............................................................ 23
    *1.* *The Strickland Standard* .............................................. 23
    *2.* *Strickland's "deficient performance" prong* ........................ 25
    *3.* *Strickland's "prejudice" prong* ....................................... 27
  D. *Respondent's Objection* ......................................................... 28
  E. *Velazquez-Ramirez's Objection* .............................................. 31

III. **CERTIFICATE OF APPEALABILITY** ............................................. 34

IV. **CONCLUSION** ............................................................................. 35

  Petitioner Esteban Velazquez-Ramirez's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody is before me pursuant to a Report and Recommendation of United States Magistrate Judge Leonard T. Strand recommending that the petition be denied. Both parties filed objections to the Report and Recommendation. I now consider whether to accept, reject, or modify Judge Strand's Report and Recommendation in light of the objections.

## I. INTRODUCTION AND BACKGROUND

### A. *Factual Background*

  Absent rebuttal by clear and convincing evidence, I must presume that any factual determinations made by a state court in a state prisoner's criminal and post-

conviction relief cases were correct. 28 U.S.C. § 2254(e)(1); *see Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009) (a federal court must deem factual findings by the state court to be presumptively correct, subject to disturbance only if proven to be incorrect by clear and convincing evidence). The Iowa Court of Appeals summarized the facts underlying Velazquez-Ramirez's conviction, as follows:

> Velazquez–Ramirez had a two-year relationship with a woman named Dora. That relationship ended, and Dora began dating another man. On the day of her death, Velazquez–Ramirez came to the Denison home of Dora's relatives and attempted to talk to Dora. He was told to leave her alone.

> Velazquez–Ramirez left town and drove to his hometown in Nebraska to retrieve a gun he had purchased a month earlier. He returned to Denison the same day, parked at Dora's workplace, and waited for Dora to finish her evening shift.

> After midnight, Dora and a friend came out of the plant and headed to their cars. As her friend got into his car and began driving out of the parking lot, he saw Dora arguing with someone. He asked her if she needed help. She said she did. He drove to her car, got out, and overheard Velazquez–Ramirez tell Dora he wanted to get back together with her. She said no and asked her friend to call the police.

> Just then, Dora's new boyfriend was seen driving through the parking lot. He was haled over and was asked to make the telephone call to police. As he started to do so, Velazquez–Ramirez pulled a gun from his clothing and shot Dora. Dora fell to the ground, and Velazquez–Ramirez took off running.

> Immediately after the shooting, Velazquez–Ramirez drove to the police station, walked in, and said, "I shot a girl." The gun used to kill Dora was found in his car. At trial, Velazquez–Ramirez admitted he shot Dora.

*Velazquez-Ramirez v. State*, 817 N.W.2d 31, at *1-2 (Iowa Ct. App. Apr. 25, 2012) (unpublished table decision).

Velazquez-Ramirez made a pre-trial motion to have a questionnaire sent to the jury panel. The Iowa District Court granted his request. In its post-conviction relief ruling, the Iowa District Court provided the following summary of that questionnaire and its results:

> Seventy-five panelists filled out the questionnaire. The relevant questions on the first page of the supplemental questionnaire (Trial Ex. 1) were:
>
> 1. Do you associate with any persons who are recent immigrants into the United States?
>
> 2. Do you have any opinion about persons who immigrate illegally into the United States? If so, what is that opinion?
>
> 3. Which of the following best describes your opinion [please circle]:
>
> > A.    I think that there should be more severe punishments against those persons who enter into and remain in the United States illegally.
> >
> > B.    I think that the punishment against those persons who enter into and remain in the United States illegally is about right.
> >
> > C.    I think that person [sic] who enter into and remain in the United States illegally should not be punished as severely as they are now.
> >
> > D.    I think that person [sic] who enter into and remain in the United States illegally should not be punished.
> >
> > E.    My opinion depends on the individual circumstances of the situation, regardless of country of origin.

F. My opinion depends largely on the country of origin.

G. None of the above. My opinion is as follows:

4. Would your answer to the previous question be different if you considered persons from different countries? For example, would it make any difference in your answer if the immigrant was from Mexico, Guatemala, Italy, or Iran? Please explain:

As to question no. 1, 15 said yes; 58 said no; 2 didn't answer.

As to question no. 2, 60 answered yes and/or wrote their opinion. Common statements were: deport them; punish them; should not be allowed to work; taking jobs from citizens; immigration should be done legally; learn/speak English.

As to question no. 3, 48 answered "A"; 10 answered "B"; 10 answered "E"; 8 answered "G".

As to question no. 4, 65 said no; 9 didn't answer and one had concerns with people from Iran.

*Velazquez-Ramirez v. State*, Crawford Co. No. LACV035590, Ruling on Post-conviction Relief at 29-30 (Iowa Dist. Ct. Oct. 20, 2010); Respondent's Appendix Doc. No. 22-1 at 36-37.

## B. Procedural Background

### 1. State proceedings

Velazsquez-Ramirez is an inmate at Anamosa State Penitentiary, Anamosa, Iowa. He was convicted following a jury trial of murder in the first degree on March 19, 2004. Velazquez-Ramirez appealed, arguing that he was denied effective assistance of counsel by his counsel's failure to "make an appropriately specific motion for

judgment of acquittal to challenge the sufficiency of the evidence to establish malice aforethought . . . ." *State v. Valazquez-Ramirez*, 697 N.W.2d 127, 2005 WL 724172, at *1 (Iowa Ct. App. Mar. 31, 2005) (unpublished table decision).[1] The Iowa Court of Appeals affirmed Velazquez-Ramirez's conviction, finding that his counsel had raised the issue of the sufficiency of the evidence to establish malice aforethought no less than four times and the district court had ruled on the issue on several occasions. *Id.* Therefore, the court of appeals concluded that Velazquez-Ramirez's counsel's conduct did not constitute deficient performance or result in prejudice. *Id.*

The Iowa Supreme Court granted review solely to discuss the issue of sufficiency of the evidence to sustain a finding of malice. *State v. Valazquez-Ramirez*, 707 N.W.2d 588, 2005 WL 3556252, at *1 (Iowa Dec. 30, 2005) (per curiam) (unpublished table decision). The Iowa Supreme Court concluded that "the evidence was sufficient beyond a reasonable doubt to sustain the finding of the jury that [Velazquez-Ramirez] acted with malice." *Id.* Thus, the Iowa Supreme Court affirmed the decision of the Iowa Court of Appeals and judgment of the district court. *Id.* at *2.

Velazquez-Ramirez then brought a state action for post-conviction relief ("PCR") in which he made the following claims: (1) Ineffective assistance of counsel for his failure to secure a second attorney to represent Velazquez; (2) Ineffective assistance of counsel for his failure to obtain a psychological exam of Velazquez; (3) That the failure to apply the ruling in *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006), retroactively to his case violated his equal protection rights;[2] (4) Ineffective assistance

---

[1] On direct appeal from his state court conviction, Velazquez-Ramirez's name was spelled "Valazquez-Ramirez."

[2] In *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006), filed after Velazquez-

(Footnote continued . . .

of counsel for presenting a juror questionnaire to potential jurors and failure to file motion in limine to exclude reference to Velazquez-Ramirez's citizenship status; (5) Ineffective assistance of counsel for failing to file a motion for change of venue; (6) Ineffective assistance of counsel for failing to demand compliance with Article 36 of the Vienna Convention on Consular Relations ("the Vienna Convention"); (7) Ineffective assistance of counsel for failing to file a motion to suppress Velazquez-Ramirez's statements to police based upon either the officers' failure to comply with the Vienna Convention or because he did not knowingly, intelligently, and voluntarily waive his Miranda rights. *See Valazquez-Ramirez v. State*, LACV035590, at 2-3 (Iowa Dist. Ct. Oct. 19, 2010). Following a trial, the Iowa District Court denied Velazquez-Ramirez's PCR claims. *Id*. at 44. Specifically, the court found that issues four and five concerned strategic decisions made by defense counsel based on his knowledge and experience, which did not constitute ineffective assistance of counsel. *Id*. at 33. The court explained:

> The jury questionnaire did not prove that the jurors could not impartially judge the merits of the case as the questionnaire did not address that question. The mere fact that a juror has an opinion about the illegal immigration issue does not demonstrate the way the juror feels about the merits of the case in question. Mr. Williams did not have any basis for requesting a change in venue as he did not have proof the jurors would not be able to impartially judge the issues.

*Id*. at 35.

---

Ramirez's direct appeal was completed, the Iowa Supreme Court held that an assault causing willful injury cannot serve as the predicate felony for felony-murder purposes "if the act causing willful injury is the same act that causes the victim's death." *Id*. at 558.

On Velazquez-Ramirez's sixth allegation of ineffective assistance of counsel, for failing to demand compliance with the Vienna Convention, the court found that Velazquez-Ramirez was notified of his right to contact the Mexican Consulate and chose not to do so. The court further noted that Iowa courts have not ruled on whether the Vienna Convention creates an individual, enforceable right, but even if such a right exists, Velazquez-Ramirez would have to prove actual prejudice because the right is not fundamental. The court found that even if defense counsel had not notified Velazquez-Ramirez of his right to contract the Mexican Consulate, Velazquez-Ramirez had failed to demonstrate that he was prejudiced as a result. *Id.* at 38-39. The Iowa Court of Appeals affirmed that denial. *Velazquez-Ramirez v. State*, 817 N.W.2d 31, 2012 WL 1438981, at *2 (Iowa Ct. App. Apr. 25, 2012) (unpublished table decision). The Iowa Supreme Court denied further review.

### 2. *Federal proceedings*

On July 2, 2012, Velazquez-Ramirez filed a *pro se* petition under 28 U.S.C. § 2254. In his petition, Velazquez-Ramirez challenges his conviction on the following grounds: (1) Ineffective assistance of counsel for failing to properly investigate prejudice in the jury pool; (2) Ineffective assistance of counsel for failing to request a change in venue; (3) Ineffective assistance of counsel for failing to raise the issue of compliance with Article 36 of the Vienna Convention; (4) Ineffective assistance of counsel for failure to make an appropriately specific motion for judgment of acquittal to challenge the sufficiency of the evidence to establish malice aforethought; and (5) Ineffective assistance of counsel for failing to file a motion to suppress statements on the grounds that Velazquez-Ramirez's statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

The case was referred to United States Magistrate Judge Leonard T. Strand pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Strand filed a thorough and

comprehensive Report and Recommendation in which he recommended denial of Velazquez-Ramirez's petition. In his Report and Recommendation, Judge Strand concluded that the Iowa Court of Appeals correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the governing rule, but unreasonably applied it by requiring Velazquez-Ramirez to show a reasonable probability that the outcome of his trial would have been different. Instead, Judge Strand concluded that to demonstrate prejudice Velazquez-Ramirez would have to establish that there is a reasonable probability that the trial judge would have found, if asked, that there was a substantial likelihood that Velazquez-Ramirez could not receive a fair trial in Crawford County. Judge Strand further found that, based on the extensive voir dire conducted of prospective jurors, Velazquez-Ramirez could not demonstrate prejudice under *Strickland*. On Velazquez-Ramirez's Vienna Convention violation claim, Judge Strand again determined that, while the Iowa Court of Appeals correctly identified *Strickland*, 466 U.S. 668, as the governing rule, it unreasonably applied it by requiring Velazquez-Ramirez to show a reasonable probability that the outcome of his trial would have been different. Judge Strand noted that, because this alleged error did not interfere with an individual constitutional right, prejudice in this context required Velazquez-Ramirez to demonstrate an appropriate motion would have been granted and that the success of that motion would have changed the outcome of his trial. Judge Strand determined that Velazquez-Ramirez did not meet this standard because any remedy his counsel could have pursued would have been futile or had no effect on the evidence presented at his trial. Judge Strand next determined that the Iowa Court of Appeals reasonably applied *Strickland* in holding that Velazquez-Ramirez had not demonstrated deficient performance by his counsel's alleged failure to challenge the sufficiency of the evidence to establish malice aforethought in a motion for judgment of acquittal. Finally, Judge Strand concluded that Velazquez-Ramirez's claim of ineffective assistance of counsel

for failure to file a motion to suppress based on a *Miranda* violation is procedurally barred and should not be considered. Thus, Judge Strand recommended that I deny Velazquez-Ramirez's § 2254 petition.

Both Velazquez-Ramirez and the respondent filed objections to Judge Strand's Report and Recommendation. Velazquez-Ramirez objects to Judge Strand's conclusion that he could not establish prejudice on his change of venue claim. The respondent objects to Judge Stand's finding that the Iowa Court of Appeals unreasonably applied the *Strickland* prejudice test. Neither party has filed a response to the other's objections.

## II.     LEGAL ANALYSIS

### A.     Review Of A Report And Recommendation

Before considering whether or not to accept Judge Strand's Report and Recommendation, I will first set out my standard of review. The applicable statute provides for *de novo* review by the district judge of a magistrate judge's report and recommendation, when objections are made, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's

report and recommendation). Thus, "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The United States Supreme Court has explained that, although the statute provides for review when objections are made, the statutory standard does not preclude review by the district court in other circumstances:

> [W]hile the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas*, 474 U.S. at 154. Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation. I will explain what triggers each specific standard of review in a little more detail.

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made.*" 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d

251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on the motion, nor did he consider oral arguments on the motion. Instead, he considered only the parties' written submissions, and I have done the same.

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at all is required. *Id.* ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, a district court may also review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* at 154. This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). Also, the Eighth Circuit Court of Appeals has indicated that, at a minimum, a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520

(8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although neither the Supreme Court nor the Eighth Circuit Court of Appeals has explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

I will review Judge Strand's Report and Recommendation with these standards in mind.

### B.     Federal Habeas Relief

Before reviewing the Report and Recommendation, I will first consider the standards for federal *habeas* relief from a state conviction. I note that the United States Supreme Court has recognized that "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Harris v. Nelson*, 394 U.S. 286, 292 (1969). Indeed, "[h]abeas corpus is one of the precious heritages of Anglo-American

13

civilization." *Fay v. Noia*, 372 U.S. 391, 441 (1963), *overruled on other grounds, Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also McClesky v. Zant*, 499 U.S. 467, 496 (1991) ("The writ of habeas corpus is one of the centerpieces of our liberties.").[3] Nevertheless, it was not until 1867 that Congress extended federal *habeas corpus* to prisoners held in state custody. *See McClesky*, 499 U.S. at 478.[4] "[T]he leading purpose of federal habeas review [in the case of a state prisoner] is to 'ensur[e] that state courts conduct criminal proceedings in accordance with the [United States] Constitution as interpreted at the time of th[ose] proceedings.'" *Graham v. Collins*, 506 U.S. 561, 467 (1993) (quoting *Saffle v. Parks*, 494 U.S. 484, 488 (1990)).

Notwithstanding its importance, I also note that the United States Supreme Court has explained that "the writ of habeas corpus has historically been regarded as an extraordinary remedy." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). Thus, various justices of the Supreme Court have cautioned that "upsetting the finality of judgment should be countenanced only in rare instances." *O'Neal v. McAninch*, 513

---

[3] The Supreme Court has recognized that the power to issue a writ of *habeas corpus* is not necessarily an unalloyed good:

> "But the writ has potentialities for evil as well as for good. Abuse of the writ may undermine the orderly administration of justice and therefore weaken the forces of authority that are essential for civilization." *Brown v. Allen*, [ ] 344 U.S. [443,] 512, 73 S. Ct., at 449 [(1953)] (opinion of Frankfurter, J.).

*McClesky*, 499 U.S. at 498.

[4] Some of the history of federal *habeas* relief, before and after it was extended to state prisoners, is set out in *Johnson v. United States*, 860 F. Supp. 2d 663, 737 n.23 (N.D. Iowa 2012).

U.S. 432, 447 (1995) (Thomas, J., joined by Rehnquist, C.J., and Scalia, J., dissenting). Furthermore, "Congress enacted the AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and to further the principles of comity, finality, and federalism." *See Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted). Therefore, "[t]o obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster*, 133 S. Ct. 1781, 1783 (2013) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011)).

In light of these concerns, as explained more fully, below, since the passage of AEDPA, *habeas* review by the federal courts of a state court conviction and the state courts' denial of post-conviction relief is limited and, at least ordinarily, deferential.

### 1.  *"Exhausted" and "adjudicated" claims*

### a.  *The "Exhaustion" and "adjudication" requirements*

The ability of the federal courts to grant habeas relief to a state prisoner depends, in the first instance, on whether or not the claim before the federal court has been "exhausted" in the state courts—a requirement found in § 2254(b) long before the AEDPA was enacted. As the Supreme Court explained four decades ago, "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity." *Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973).

More specifically, the AEDPA provides that federal habeas relief cannot be granted to a person in state custody, unless it appears that "the applicant has exhausted the remedies available in the courts of the State," or "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). "[F]or purposes of

exhausting state remedies, a claim for relief in habeas corpus [in the state court] must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 516 U.S. 152, 162-63 (1996) (citing this rule as the holding of *Picard v. Connor*, 404 U.S. 270 (1971)). A federal court has the authority to deny relief on the merits on an unexhausted claim, see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), but it cannot grant relief on such a claim. Id. at § 2254(b)(1). At least theoretically, "once a state prisoner arrives in federal court with his petition for habeas corpus [asserting properly exhausted claims], the federal habeas statute provides for a swift, flexible, and summary determination of his claim." Preiser, 411 U.S. at 495 (citing 28 U.S.C. § 2243, which provides for preliminary review of a state prisoner's petition to determine whether it appears from the application that the petitioner is not entitled to relief).

As to the "adjudicated on the merits" requirement, the Supreme Court has held "that, when a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson*, 1333 S. Ct. at 1091 (emphasis in the original) (citing *Harrington v. Richter*, 131 S. Ct. 770 (2011)). Similarly, "when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question," the Supreme Court has held "that the federal claim at issue . . . must be presumed to have been adjudicated on the merits by the [state] courts," and that, if the presumption is not adequately rebutted,

"the restrictive standard of review set out in § 2254(d)(2) consequently applies." Id. at 1091-92.

### b. *Limitations on relief on "exhausted" claims*

If a claim is "exhausted," then the ability of a federal court to grant *habeas* relief depends on the nature of the alleged error by the state courts. As the Supreme Court explained, "One of the methods Congress used to advance the[ ] objectives [of AEDPA] was the adoption of an amended 28 U.S.C. § 2254(d)," which "places 'new constraint[s] on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.'" *Woodford*, 538 U.S. at 206 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[Supreme Court] cases make clear that AEDPA in general and § 2254(d) in particular focus in large measure on revising the standards used for evaluating the merits of a habeas application." *Id.*

Specifically, as the Supreme Court more recently explained, the power of the federal court to grant relief to a person in state custody on a properly exhausted claim is limited, as follows:

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court." 28 U.S.C. § 2254(d). Specifically, if a claim has been "adjudicated on the merits in State court," a federal habeas court may not grant relief unless "the adjudication of the claim—
>
> > "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Ibid*.
>
> Because the requirements of § 2254(d) are difficult to meet, it is important whether a federal claim was "adjudicated on the merits in State court."

*Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). This is a "difficult to meet . . . and highly deferential standard." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks omitted). This highly deferential standard is appropriate, "because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (internal quotation marks and citations omitted).

### 2. The § 2254(d)(1) standards

#### a. The "contrary to" clause

A state court decision is "contrary to" clearly established federal law, within the meaning of § 2254(d)(1), "if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1390 (2012) (quoting *Williams*, 529 U.S. at 405)). "A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 406. A federal court's belief that it might have reached a different result is not enough to show that the state court decision was "contrary to" established federal law, where the state court applied the correct standard under established Supreme Court law. *Id.*

### b.   The "unreasonable application" clause

A state court's decision involves an "unreasonable application" of federal law, within the meaning of § 2254(d)(1), if "'there was no reasonable basis for' the [state court's] decision." *Cullen*, 131 S. Ct. at 1402 (quoting *Richter*, 131 S. Ct. at 786). Thus, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Richter*, 131 S. Ct. at 785 (emphasis in the original) (quoting *Williams*, 529 U.S. at 410).

> [T]his Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." [*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)]. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Richter*, 131 S. Ct. at 786.   "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

Nevertheless, where the rule itself is clearly established, the Supreme Court has recognized two ways in which it can be unreasonably applied:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Williams*, 529 U.S. at 407 (O'Connor, J., writing for the majority). The Supreme Court recognized that there were "some problems of precision" with "unreasonable application" as to extension or failure to extend a clearly established rule to a new context:

> *Just as it is sometimes difficult to distinguish a mixed question of law and fact from a question of fact, it will often be difficult to identify separately those state-court decisions that involve an unreasonable application of a legal principle (or an unreasonable failure to apply a legal principle) to a new context.* Indeed, on the one hand, in some cases it will be hard to distinguish a decision involving an unreasonable extension of a legal principle from a decision involving an unreasonable application of law to facts. On the other hand, in many of the same cases it will also be difficult to distinguish a decision involving an unreasonable extension of a legal principle from a decision that "arrives at a conclusion opposite to that reached by this Court on a question of law," *supra*, at 1519. Today's case does not require us to decide how such "extension of legal principle" cases should be treated under § 2254(d)(1). *For now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's "unreasonable application" clause.*

*Williams*, 529 U.S. at 408-09 (O'Connor, J., writing for the majority) (emphasis added).

### c. The effect of § 2254(d)(1) deficiencies in the state court decision

Even if a petitioner establishes that the state court's determination was "contrary to" or an "unreasonable application of" federal law, within the meaning of § 2254(d)(1), that determination does not, standing alone, entitle the petitioner to relief. Rather, it only entitles the petitioner to *de novo* consideration by the federal court of his

or her *underlying constitutional claim* for post-conviction or *habeas* relief. *See Johnson*, 133 S. Ct. at 1097 ("Even while leaving 'primary responsibility' for adjudicating federal claims to the States, AEDPA permits de novo review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent." (internal citations omitted)); *Lafler*, 132 S. Ct. at 1390-91 (holding that, where the state court's decision was "contrary to" clearly established federal law, because it failed to apply the *Strickland* standards to an ineffective assistance of counsel claim, the federal court "can determine the principles necessary to grant relief" and apply them to the facts of the case); *Richter*, 131 S. Ct. at 770 (stating that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law"); *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (stating that, when the state court's adjudication was "contrary to" Federal law, within the meaning of § 2254(d)(1), "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (performing the analysis required under *Strickland*'s "prejudice" prong without deferring to the state court's decision, because the state court's resolution of *Strickland*'s "deficient performance" prong involved an "unreasonable application" of federal law, and the state court had considered the "deficient performance" prong dispositive).

### 3. The § 2254(d)(2) standard

Just as the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have "independent meaning," *see Williams*, 529 U.S. at 405, the "unreasonable determination" clause of § 2254(d)(2) also involves separate considerations, related not to established federal law, but to sufficiency of the evidence. Section 2254(d)(2) provides for relief from a state court denial of post-conviction relief, if the state court proceedings "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." Again, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (applying this question to both the "unreasonable application" clause in § 2254(d)(1) and the "unreasonable determination" clause in § 2254(d)(2)). Thus, the federal court must "presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). "The standard is demanding but not insatiable; as [the Court] said . . . , '[d]eference does not by definition preclude relief.'" *Id.* (quoting its prior decision in the same case, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### 4. De novo review of issues not reached by the state court

A federal court may also review *de novo* an element of a state prisoner's constitutional claim that the state court did not reach at all, because the state court found another element to be dispositive of the prisoner's claim. *See Porter v. McCuollum*, 558 U.S. 30, 38 (2009) (stating, "Because the state court did not decide whether Porter's counsel was deficient, we review *this element* of Porter's *Strickland* claim *de novo,*" and also finding that the state court's determination that there was no prejudice was an unreasonable application of *Strickland* (emphasis added)); *Cone v. Bell*, 556 U.S. 449, 472 (2009) (reviewing *de novo* the state prisoner's *Brady* claim, because the state courts did not reach the merits of that claim); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, App. 265, 272–273, and so we examine *this element* of the *Strickland* claim *de novo*." (emphasis added)); *Wiggins*, 539 U.S. at 534 ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of

available mitigating evidence. In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").

### C. *"Clearly Established Federal Law" Regarding Ineffective Assistance Of Counsel*

The parties' objections to Judge Strand's Report and Recommendation all relate to Judge Strand's analysis of the state court's disposition of his constitutional claim of ineffective assistance of counsel. Before considering these objections, I must first "identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall*, ___ U.S. at ___, 133 S. Ct. at 1449 (explaining that this is the starting point for cases subject to § 2254(d)(1)); *Williams*, 529 U.S. at 412 (same); *Knowles*, 556 U.S. at 122 (same).

### 1. *The Strickland Standard*

The Supreme Court has explained that "[t]he right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1404 (2012) (citing *Strickland*, 466 U.S. at 686). In the context of a claim of ineffective assistance of counsel, the Supreme Court has concluded that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 391. More specifically, "[t]o prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052." *Wong v. Belmontes*, 558 U.S. 15, 16 (2009) (*per curiam*). The Supreme Court has explained that

> "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Richter, supra*, at ----, 131 S. Ct., at 788 (quoting

> *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S. Ct. 1473,
> 1484, 176 L.Ed.2d 284, (2010)). The *Strickland* standard
> must be applied with "scrupulous care." *Richter*, *supra*, at –
> ---, 131 S. Ct., at 788.

*Cullen*, 131 S. Ct. at 1408.

Although the *Strickland* analysis is "clearly established federal law," and the petitioner must prove both prongs of that analysis to prevail, the Supreme Court does not necessarily require consideration of *both* prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[5]

---

[5] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice

(Footnote continued . . .

I will consider the two prongs of the *Strickland* analysis in a little more detail, before turning to analysis of the parties' objections to the Report and Recommendation.

### 2. *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland*, 466 U.S. at 688); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions.'" *Cullen*, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S. Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense

---

resulted from counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S. Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S. Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ––––, 131 S. Ct., at 779.

*Cullen*, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S. Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S. Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it

deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### 3.      *Strickland's "prejudice" prong*

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ––––, 131 S. Ct., at 791.

*Cullen*, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

## D.    Respondent's Objection

I first take up respondent's objection since my determination of that objection, in turn, impacts my analysis of Velazquez-Ramirez's objection. The parties disagree over whether *Strickland*'s prejudice prong must be determined in a context-specific analysis. Respondent contends that the focus of the *Strickland* prejudice prong, here, should be on the reasonable probability of a different verdict and not the outcome of a change of venue motion. Thus, respondent argues that Judge Strand erred when he found that the Iowa Court of Appeals "unreasonably applied" *Strickland* when it determined that Velazquez-Ramirez could not establish the prejudice prong of the *Strickland* test because there was no reasonable likelihood the result of his trial would have been any different.[6]

To support his argument, respondent relies on W*right v. Nix*, 928 F.2d 270, 273 (8th Cir. 1991), and its progeny. This reliance is misplaced, because *Wright* did not concern a claim that defense counsel was ineffective in failing to move for a change of venue. Instead, *Wright* involved defense counsel's failure to object to the allegedly race-based striking of certain prospective jurors. *Id.* The petitioner argued that he only needed to show that a different, impartial jury would have been seated but for his counsel's error in order to establish prejudice. *Id.* The court disagreed stating "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.*

_____

[6]Velazquez-Ramirez, on the other hand, agrees with Judge Strand that *Strickland*'s prejudice prong must be determined in a context-specific analysis, so that, here, the focus must be on the possible result of a change of venue motion. Velazquez-Ramirez, however, disagrees with Judge Strand's conclusion about the results of that context-specific analysis here.

(quoting *Strickland*, 466 U.S. at 691). Respondent's focus solely on the likely result of the trial also ignores more recent Supreme Court precedent clearly requiring that prejudice under *Strickland* must be determined in a context-specific analysis. Most recently, in *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), where the alleged error was counsel's advice to defendant to reject a plea offer and the defendant was subsequently convicted and received a sentence three and a half times more severe than he likely would have by pleading guilty, the defendant was required to demonstrate a reasonable probability that he and the trial court would have accepted the guilty plea but for his counsel's deficient performance. *Id.* at 1391. Prior to *Lafler*, in *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009), the Court addressed counsel's alleged erroneous advice to the defendant to withdraw his plea of not guilty by reason of insanity. A jury heard evidence of the defendant's mental condition during the first phase of the trial and found him guilty of first-degree murder. *Id.* at 114. The Court held that to establish prejudice from his counsel's alleged error, the defendant was required to show a reasonable probability that he would have prevailed on his insanity defense had he pursued it in the second phase of trial. *Id.* at 127. To prevail on his insanity defense, the defendant would have had to prove insanity by a preponderance of the evidence. *Id.* at 125. Finally, in *Lockhart v. Fretwell*, 506 U.S. 364 (1993), the Court warned that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." *Id.* at 369.

I discussed, in detail, the issue of context-specific determinations of prejudice in *Escobedo v. Lund*, 948 F. Supp.2d 951, 992-994 (N.D. Iowa 2013). As I explained:

> [I]t is a well-established principle of Supreme Court law that the "probability of a different outcome" must be considered in the context of the specific errors of counsel that are alleged. Thus, while the Iowa Supreme Court may properly

have held in *Ledezma v. State*, 626 N.W.2d 134 (Iowa 2001), that the standard for "prejudice" from trial counsel's deficient performance in failing to investigate and present evidence and refusing to call the defendant to testify to support a theory of defense was whether there was a "reasonable probability of a different verdict, or that the fact finder would have possessed reasonable doubt," 626 N.W.2d at 144, that is not the proper standard in *all* cases. It is only when the allegedly deficient performance concerns the evidence that defense counsel should have developed and presented, or should *not* have developed and presented, that the ultimate outcome of the proceedings, that is, the conviction or the sentence, is the "outcome of the proceedings" at issue, and only then that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

*Id.* at 994.

Those federal circuit courts of appeals to address S*trickland*'s prejudice inquiry, in the context of counsel's alleged error in failing to file a motion for change of venue, have held that the defendant must prove that there is a reasonable probability that the trial court would have granted a motion for change of venue if defense counsel had made such a motion. *See Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2001) ("In order to satisfy the prejudice prong of *Strickland*'s ineffective assistance analysis, Meeks must establish that there is a reasonable probability that, but for his counsel's failure to move the court for a change of venue, the result of the proceeding would have been different. This requires, at a minimum, that Meeks bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if Meeks' counsel had presented such a motion to the court."); *see also Deiterman v. Kansas*, 291 Fed. App'x 153, 159 (10th Cir. 2008) (finding the state appellate court's adjudication of the

prejudice prong was not contrary to nor an objectively unreasonable application of *Strickland* when it found petitioner "failed to establish a reasonable probability that his trial counsel would have succeeded on a renewed change of venue motion."); *Tafoya v. Tansy*, 9 Fed. App'x 862, 871 (9th Cir. 2001) (holding that petitioner contending that his counsel was ineffective because he failed to move for a change of venue "must show, at a minimum, that the trial court would have or should have granted a change of venue motion.") (unpublished opinion). I agree with those decisions and conclude that Judge Strand did not err in concluding a context-specific determination of prejudice, here, required Velazquez-Ramirez to demonstrate a reasonable probability that the trial judge would have granted a motion to change venue if his counsel had made such a motion. Respondent's focus solely on the ultimate outcome of the trial is misplaced in this context. As I pointed out in *Escobedo*:

> Were the test of "prejudice" from deficient performance of counsel only and always whether or not there was a reasonable probability of ultimate conviction, the right to counsel would be nugatory for all but innocent defendants. That is not, and has never been, our understanding of the right to counsel or any other constitutional right of a criminal defendant.

*Escobedo*, 948 F. Supp.2d at 996. Therefore, respondent's objection is overruled.

### E.    *Velazquez-Ramirez's Objection*

As I noted above, Velazquez-Ramirez agrees with Judge Strand that, in the context-specific determination of prejudice here, he was required to demonstrate a reasonable probability that the trial judge would have granted a motion to change venue if his counsel had made such a motion. Velazquez-Ramirez objects to Judge Strand's conclusion that he failed to make this showing. Velazquez-Ramirez argues that the

prospective jurors' responses to the questionnaire made it likely that the trial court would have granted a motion for change of venue if the motion had been made.

Iowa Rule of Criminal Procedure 2.11(10) authorizes a change of venue under the following circumstances:

> If the court is satisfied from a motion for a change of venue and the evidence introduced in support of the motion that such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county, the court either shall order that the action be transferred to another county in which the offensive condition does not exist, as provided in rule 2.11(10)(c), or shall order that the trial jury be impaneled in and transferred from a county in which the offensive condition does not exist, as provided in rule 2.11(10)(d).

IOWA R. CRIM. P. 2.11(10). The Iowa appellate courts have repeatedly held that the "crucial determination" in this analysis is whether "as a result of pretrial publicity or for other reasons, a substantial number of prospective jurors hold such fixed opinions on the *merits of the case* that they cannot impartially judge the issues to be determined at trial." *State v. Harris*, 436 N.W.2d 364, 367 (Iowa 1989) (emphasis added); *see State v. Farmer*, 492 N.W.2d 239, 241 (Iowa Ct. App. 1992) (same); *State v. Findling*, 456 N.W.2d 3, 6 (Iowa Ct. App. 1990) (same); *Stonerook v. State*, 781 N.W.2d 302, 201 WL 786045, at *3 (Iowa Ct. App. Mar. 10, 2010) (same) (unpublished table decision).

The flaw in Velazquez-Ramirez's reliance on the responses in the juror questionnaires is that the questionnaire, standing alone, did not provide a basis to justify a motion for change of venue. The questionnaire asked about prospective jurors' feelings towards issues related to illegal immigration, not their feelings toward Velazquez-Ramirez. Thus, while the juror questionnaires indicated a majority of

prospective jurors had strong feelings on illegal immigration, those questionnaires did not demonstrate prejudice towards Velazquez-Ramirez or with regard to the merits of the case. Voir dire was extensive and thorough with prospective jurors being questioned individually if Velazquez-Ramirez's immigration status or nationality would affect their view of the case and if they could put aside any feelings they had about illegal immigration and make a decision based solely on the evidence presented at the trial. Prospective jurors who indicated they would have difficulty with this were excused for cause. As Judge Strand recognized, this is the preferred method for investigating possible prejudice. *See United States v. Bear Runner*, 502 F.2d 908, 912-13 (8th Cir. 1974) ("the better practice in a sensitive case is to direct probing questions touching areas of possible prejudice to each individual juror, with the questions to be asked by the trial judge or counsel."); see also *United States v. Ortiz*, 315 F.3d 873, 888 (8th Cir. 2002) (noting that "the better practice is to ask 'direct probing questions' of individual veniremen, 'particularly . . . when the overall circumstances and surroundings suggest the possibility of racial bias.'") (quoting *Bear Runner*, 502 F.2d at 912). All of the persons who actually served on the jury indicated they could be fair and impartial. Further, there is nothing about their responses that suggests they should not have been believed by the trial court and counsel. Based on this record, I find Velazquez-Ramirez is unable to demonstrate prejudice under *Strickland* because he is unable to show a reasonable probability that the trial court would have granted a motion for change of venue if defense counsel had requested one. Therefore, Velazquez-Ramirez's objection is overruled and his claim of ineffective assistance of counsel for failure to file a motion for change of venue is denied.[7]

---

[7]No objections have been filed concerning Velazquez-Ramirez's other claims of

(Footnote continued . . .

## III.    CERTIFICATE OF APPEALABILITY

Velazquez-Ramirez must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of

---

ineffective assistance of counsel. As a result, I have reviewed those portions of Judge Strand's Report and Recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). After conducting my review, I am not "'left with [a] definite and firm conviction that a mistake has been committed,'" and find no reason to reject or modify the other portions of Judge Strand's Report and Recommendation. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Therefore, I accept those other portions of Judge Strand's Report and Recommendation and deny Velazquez-Ramirez's other claims of ineffective assistance of counsel.

the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Velazquez-Ramirez's petition does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, with respect to Velazquez-Ramirez's claims, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Should Velazquez-Ramirez wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## IV. CONCLUSION

For the reasons discussed above, I accept Judge Strand's Report and Recommendation. Therefore, Velazquez-Ramirez's Petition for Writ of Habeas Corpus is dismissed. I further order that no certificate of appealability shall be issued for any of Velazquez-Ramirez's claims.

**IT IS SO ORDERED**.

**DATED** this 7th day of February, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA